CORLISS et al. v. E. W. WALKER CO. et al.

(Circuit Court, D. Massachusetts. November 19, 1894.)

No. 3,152.

1. PUBLICATION OF PORTRAIT—PHOTOGRAPHER'S CONTRACT.
 It is a breach of contract and violation of confidence for a photographer to make unauthorized copies of a customer's photograph.

2. SAME—PRIVATE AND PUBLIC CHARACTERS.
 A private individual may enjoin the publication of his portrait, but a public character cannot, in the absence of breach of contract or violation of confidence in securing the photograph from which the publication is made.

3. SAME—"PUBLIC CHARACTERS"—INVENTORS.
 One who is among the foremost inventors of his time is a "public character," within the above rule.

This was a suit by Emily A. Corliss and others to enjoin the E. W. Walker Company and others from inserting a portrait of George H. Corliss in a biographical sketch about to be published by them. An injunction was heretofore granted (57 Fed. 434), and defendants have moved to dissolve the same.

Henry Marsh, Jr., and James M. Ripley, for complainants.
M. L. Sanborn and Henry E. Fales, for defendants.

COLT, Circuit Judge. The defendants move to dissolve the injunction heretofore granted in this case. As the case was first presented, it appeared that the print of George H. Corliss to be inserted in a biographical sketch about to be published by the defendants was taken from a photograph obtained from Mrs. Corliss by the defendants upon certain conditions, which they had failed to comply with, and the court granted an injunction upon the ground that the proposed use by the defendants would be a breach of contract and a violation of confidence. 57 Fed. 434. Upon a full presentation of the facts at the present hearing, it now appears that the defendants obtained two photographs of Mr. Corliss, and that the one received from Mrs. Corliss was returned to her, while the other, from which the print was actually taken, was purchased for the defendants at a store in Providence several months before any contract was entered into between the parties, or any correspondence had in relation to the subject. It must be confessed that the case now assumes a different aspect. If we eliminate the element of contract or trust, the question resolves itself into the broad proposition of how far an individual, in his lifetime, or his heirs at law after his death, have the right to control the reproduction of his picture or photograph. The photograph obtained by the defendants was a copy of an original taken by Mr. Heald, of Providence, for Mr. Corliss, in September, 1885. Mr. Corliss engaged Mr. Heald, in the ordinary way, to take his photograph, and paid for the pictures which he ordered. The contention of the plaintiffs is that Mr. Heald had no right to make prints from the original negative, other than those which Mr. Corliss ordered, and that neither Mr. Heald nor any one else had the right to reproduce copies from any of the photographs ordered by Mr. Corliss, and that to do so would be a breach of contract or a violation of confidence, for which relief can be had in a court of equity. In support of this position, the plaintiffs say that Mr. Corliss never authorized Mr. Heald to make any prints from the negative, except those he ordered, and that after his death, in February, 1888, Mrs. Corliss obtained the original negative, and forbade Mr. Heald from exhibiting in his studio any pictures of Mr. Corliss.

When a person engages a photographer to take his picture, agreeing to pay so much for the copies which he desires, the transaction assumes the form of a contract; and it is a breach of contract, as well as a violation of confidence, for the photographer to make additional copies from the negative. The negative may belong to the photographer, but the right to print additional copies is the right of the customer. Pollard v. Photographic Co., 40 Ch. Div. 345; Tuck

v. Priester, 19 Q. B. Div. 629. Independently of the question of contract, I believe the law to be that a private individual has a right to be protected in the representation of his portrait in any form; that this is a property as well as a personal right; and that it belongs to the same class of rights which forbids the reproduction of a private manuscript or painting, or the publication of private letters, or of oral lectures delivered by a teacher to his class, or the revelation of the contents of a merchant's books by a clerk. Duke of Queensberry v. Shebbeare, 2 Eden, 329; Gee v. Pritchard, 2 Swanst. 402; Folsom v. Marsh, 2 Story, 100, Fed. Cas. No. 4,901; Abernethy v. Hutchinson, 3 Law J. Ch. 209; Caird v. Sime, 12 App. Cas. 326; Tipping v. Clarke, 2 Hare, 383, 393; Williams v. Insurance Co., 23 Beav. 338. In case of Prince Albert v. Strange, 1 Mac. & G. 25, 2 De Gex & S. 652, this doctrine was extended so far as to prohibit the publication of a catalogue of private etchings. But, while the right of a private individual to prohibit the reproduction of his picture or photograph should be recognized and enforced, this right may be surrendered or dedicated to the public by the act of the individual, just the same as a private manuscript, book, or painting becomes (when not protected by copyright) public property by the act of publication. The distinction in the case of a picture or photograph lies, it seems to me, between public and private characters. A private individual should be protected against the publication of any portraiture of himself, but where an individual becomes a public character the case is different. A statesman, author, artist, or inventor, who asks for and desires public recognition, may be said to have surrendered this right to the public. When any one obtains a picture or photograph of such a person, and there is no breach of contract or violation of confidence in the method by which it was obtained, he has the right to reproduce it, whether in a newspaper, magazine, or book. It would be extending this right of protection too far to say that the general public can be prohibited from knowing the personal appearance of great public characters. Such characters may be said, of their own volition, to have dedicated to the public the right of any fair portraiture of themselves. In this sense, I cannot but regard Mr. Corliss as a public man. He was among the first of American inventors, and he sought public recognition as such.

The defendants, in the present instance, obtained a photograph of Mr. Corliss at a public shop in Providence. Whatever contract may have existed between the photographer and Mr. Corliss, they were not a party to it, and they had the same right to reprint copies from this photograph that they would have had from that of any other public man. Further, it does not seem that Mr. Corliss, personally, ever objected to the reproduction of his picture, but, on the contrary, that he permitted thousands of his pictures to be circulated. Ten thousand pictures of Mr. Corliss were sold or given away, without objection on his part, at the time of the Centennial Exhibition, in 1876. In 1886 there was published in Providence, by J. A. & R. A. Reid, about 10,000 copies of a book called "Provi-

dence Plantations," in which a picture of Mr. Corliss appears, which is a reprint from the Heald photograph, now in controversy. His picture also was printed in Harper's Weekly of March 3, 1888, and in the Scientific American of June 2, 1888. I am aware that Mrs. Corliss says that she wrote a letter, at the request of her husband, to the Messrs. Reid, forbidding the insertion of the picture in the "Providence Plantations," and that she also declares that the publication in the Harper's Weekly and Scientific American were authorized by the family; but, whatever may be the position now taken by the plaintiffs, there is no substantial evidence that Mr. Corliss, in his lifetime, ever prohibited the reproduction and circulation of his picture.

Upon the facts as now presented, and for the reasons given, I am of opinion that the defendants have a right to insert in the biographical sketch of Mr. Corliss published by them a print of his photograph, and the motion to dissolve the injunction is granted. Motion granted