In the

# United States Court of Appeals
## For the Seventh Circuit

Nos. 24-2869, 24-3103, 25-1185 & 25-1223

NICHOLAS GIOVANNELLI,

*Plaintiff-Appellant,*

*v.*

WALMART INC., *et al.*,

*Defendants-Appellees.*

Appeals from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:21-cv-01092 — **Edmond E. Chang**, *Judge.*
No. 1:22-cv-02161 — **LaShonda A. Hunt**, *Judge.*
Nos. 1:22-cv-02159 & 60 — **Jeffrey I. Cummings**, *Judge.*

ARGUED NOVEMBER 4, 2025 — DECIDED JANUARY 22, 2026

Before BRENNAN, *Chief Judge*, and SCUDDER and PRYOR, *Circuit Judges*.

BRENNAN, *Chief Judge*. During a military deployment in Afghanistan, Nicholas Giovannelli was photographed while on patrol. Unknown to him, that image was downloaded, licensed, and used in a poster later sold by defendants. Years after, Giovannelli saw the poster for sale online and sued the

companies responsible under the Illinois Right of Publicity
Act, 765 ILCS 1075/1 et seq. Normally, his suit would be too
late: the Act has a one-year statute of limitations, and the de-
fendants first published his photo several years ago. But Gio-
vannelli argues that under the Act, Illinois courts would apply
a discovery rule to his claim. This means his claim would arise
when he *discovered* the published picture, not when the pic-
ture was *published*. But because we sit in diversity, and an Illi-
nois Appellate Court has declined to apply the discovery rule
for a claim under the Act, we do the same.

## I.

Nicholas Giovannelli is a United States Army veteran. In
March 2009, an Army photographer snapped an action shot
of him while on patrol in Afghanistan. The photo was posted
on the Department of Defense website, where it was publicly
available. Stocktrek Images downloaded the picture and li-
censed it to Posterazzi, which used Giovannelli's combat
photo in posters. The image was sold online by companies in-
cluding Posterazzi, Walmart, Pixels, and Amazon.

In 2020 an Army friend of Giovannelli searched the inter-
net for the name of their unit, "14 Bravo." He came across
posters depicting Giovannelli and alerted him. According to
Giovannelli, when he saw the photo on the posters, his PTSD
symptoms returned, causing severe distress. He sued, alleg-
ing Walmart, Stocktrek, Pixels, Amazon, and Posterazzi vio-
lated the Illinois Right of Publicity Act ("the Act"). The Act
prohibits using an individual's identity for commercial use
without their consent. 765 ILCS 1075/30(a). The case was re-
moved to federal court. The district court severed the case into
several cases to cure a misjoinder problem.

The defendants moved for summary judgment, contending Giovannelli's suit was filed outside the Act's statute of limitations. That motion was granted in each case. Under state law, the district judges reasoned, Giovannelli's claim was time-barred under *Blair v. Nevada Landing Partnership*, which held that the statute of limitations for his claim under the Act is one year, beginning when the photo is published. 859 N.E.2d 1188, 1192 (Ill. App. Ct. 2006). Giovannelli timely appeals.

## II.

"We review a district court's grant of summary judgment de novo, construing the facts in the light most favorable to [the non-movant] and drawing reasonable inferences in his favor." *Bourke v. Collins*, 142 F.4th 918, 921 (7th Cir. 2025). Summary judgment is appropriate when the moving party shows "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).

Diversity jurisdiction is our basis of authority. 28 U.S.C. § 1332. So we apply Illinois substantive law. *See Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938). State substantive law includes a state's statutes of limitations. *Guar. Tr. Co. of N.Y. v. York*, 326 U.S. 99, 110 (1945); *Hollander v. Brown*, 457 F.3d 688, 692 (7th Cir. 2006).

When applying state law, "a state supreme court's rule would control, [and] a state appellate court's decision can provide controlling guidance as well." *Smith v. RecordQuest, LLC*, 989 F.3d 513, 517–18 (7th Cir. 2021). When no decision from the state supreme court squarely controls, federal courts predict how the relevant state court would rule, otherwise

called an "*Erie* guess." *Id.* at 519. When making an *Erie* guess, decisions from the intermediate state appellate court prove helpful—they act as a compass for how the state supreme court may rule. *Id.* at 517. Indeed, "[i]n the absence of guiding decisions by the state's highest court, we consult and follow the decisions of intermediate appellate courts unless there is a convincing reason to predict the state's highest court would disagree." *Id.* (citation omitted).

Giovannelli sued under a state statute, but we begin with the common law. Illinois courts recognized "invasion of privacy" torts. *Ainsworth v. Century Supply Co.*, 693 N.E.2d 510, 512–13 (Ill. App. Ct. 1995). One such tort was appropriating another's likeness. *Id.* The statute of limitations for that claim was historically one year after the cause of action has accrued. *Benitez v. KFC Nat'l Mgmt.*, 714 N.E.2d 1002, 1007 (Ill. App. Ct. 1999).

To replace this common-law tort, in 1999 Illinois created a statutory cause of action for appropriating another's name or likeness, called "The Right of Publicity Act." A "person may not use an individual's identity for commercial purposes during the individual's lifetime without having obtained previous written consent from the appropriate person or persons." 765 ILCS 1075/30(a). All rights and remedies under the Act supplanted "those available under the common law." *Id.* at 1075/60.

The Act, however, lacks an express statute of limitations. *Blair*, 859 N.E.2d at 1192. That issue came before the Illinois Appellate Court in *Blair*. There, the named plaintiff worked as a steakhouse manager. *Id.* at 1189. In 1994 he and two other employees modeled for promotional photographs, pretending to dine at the restaurant. *Id.* Those photos were used in

flyers, brochures, menus, signs, and on the steakhouse's website. *Id.* at 1190. Blair noticed the photos "just about every day that he worked." *Id.* Later, he quit and sued under the Act in 2005.

Two holdings from *Blair* are relevant here. Initially, the court determined *how long* the statute of limitations is under the Act. Because the common-law tort of appropriating a likeness had a statute of limitations of one year, and the Act "completely supplanted the common-law tort," the court concluded the Act adopted the one-year statute of limitations. *Id.* at 1192.

Next, the court answered *when* the statute of limitations begins. There were two rules to choose from. First, under the "single-publication rule," the statute of limitations begins when an image is first published, no matter when the plaintiff becomes aware of the publication. *Id.* at 1195. Or, second, under the "discovery rule," the statute of limitations begins when the plaintiff "knows or reasonably should know" of his wrongful injury. *Id. Blair* held that the single publication rule applies to the Act because "the application of the discovery rule undermines the single-publication rule." *Id.*

*Blair* thus resolves Giovannelli's appeal. Pixels published Giovannelli's picture in 2011; Walmart did so in 2016; and Amazon in 2018. Under *Blair*, Giovannelli had one year to file suit after each publication. Yet he sued in 2021, so his claim is time-barred. That he discovered the posters were being sold online in 2020 is irrelevant.

Giovannelli claims that *Blair*'s discovery rule analysis is dicta because that reasoning was not necessary to reach the case's result. As Giovannelli sees it, because Blair saw the

photo each day, his claim would have been time-barred even if the court had applied the discovery rule, as he "discovered" the photos years before he sued. As a result, the court's discovery rule discussion did not change the disposition; Blair's claim failed under either the single-publication rule or the discovery rule. That makes the analysis dicta. *See United States v. Crawley*, 837 F.2d 291, 292 (7th Cir. 1988) (dicta is language that can be "deleted without seriously impairing the analytical foundations of the holding" (quoting *Sarnoff v. Am. Home Prods. Corp.*, 798 F.2d 1075, 1084 (7th Cir. 1986))); *see also Carter v. Tegels*, 135 F.4th 534, 545 n.7 (7th Cir. 2025) (providing examples of dicta).

But Blair asked the Illinois Appellate Court to apply the discovery rule: "The plaintiff argues that we should apply the discovery rule instead of a literal application of the statute of limitations." *Blair*, 859 N.E.2d at 1195. There would have been no reason for Blair to claim the discovery rule's benefit if it did not help him. So, applying the discovery rule presumably would have changed the outcome. The refusal in *Blair* to impose the rule was therefore "necessarily essential to the decision," making it part of the *ratio decidendi*, and thus controlling. *Crawley*, 837 F.2d at 292.

But even if Giovannelli is correct, we need not turn a blind eye to state court dicta. When making an *Erie* guess, federal courts "may look to the decisions of the state's other courts, including considered dicta for clues as to how the highest court of the state might resolve the open question." *Green Plains Trade Grp., LLC v. Archer Daniels Midland Co.*, 90 F.4th 919, 927–28 (7th Cir. 2024) (citation modified). After all, we consider "all the available data" to decide how the Illinois Supreme Court would rule. *West v. Am. Tel. & Tel. Co.*, 311 U.S.

223, 237 (1940). *Blair*'s rejection of the discovery rule thus reveals how the state supreme court would rule.

Indeed, there is good reason to think the Illinois Supreme Court would adopt *Blair*. In *Ciolino v. Simon*, a documentary film implied that private investigator Paul Ciolino obtained a false confession from a wrongfully detained man. 192 N.E.3d 579, 581–82 (Ill. 2021). After the documentary was screened several times, Ciolino sued for defamation. *Id.* at 582. The defendant argued the claim was time-barred. *Id.* at 591. But a July 2015 screening was a republication, thus retriggering the statute of limitations. *Id.* at 590. Ciolino filed his suit within one year of that screening, so his suit was timely. *Id.* at 590–91.

To reach this conclusion, the court cited *Blair* and approved of its application of the single-publication rule. *Id.* at 589. In *Ciolino,* the court observed, "in the cases holding that the publications at issue therein were subject to the single-publication rule, the publications were 'mass-published' to a general or national audience … *Blair*, 859 N.E.2d 1188 (finding that the photo was 'delivered to a mass sector of the public')." *Id.* True, the discovery rule's application was not at issue in *Ciolino*. *Id.* at 591 ("Because the complaint is timely filed, we need not consider whether the discovery rule would apply to toll the statute of limitations."). But if the Illinois Supreme Court was to face that issue, it would likely again express approval of *Blair*'s reasoning, given that no Illinois authorities have doubted it.

Based on the clues we can muster, the best reading of Illinois law supports *Blair*. The discovery rule does not apply to Giovanelli's claim under the Act. So his claim is too late, as three district judges correctly concluded.

That is not the end of the matter, however. There is a recognized exception to the single-publication rule. The discovery rule does apply if a plaintiff can show the publication was "hidden, inherently undiscoverable, or inherently unknowable." *Blair*, 859 N.E.2d at 1195. This exception makes sense: a plaintiff cannot be faulted for failing to discover the undiscoverable. *Workforce Sols. v. Urb. Servs. of Am., Inc.*, 977 N.E.2d 267, 279 (Ill. App. Ct. 2012) (the discovery rule alleviates the "harsh results resulting from the literal application of the [limitations] statute" (quoting *Knox Coll. v. Celotex Corp.*, 430 N.E.2d 976, 979 (Ill. 1981))). Thus, the question is whether the publications of Giovannelli's picture were "hidden, inherently undiscoverable, or inherently unknowable." *Blair*, 859 N.E.2d at 1195.

The facts here do not fall within this exception to the single-publication rule. His photo was published on popular, publicly accessible e-commerce websites. Search engines could and did assist Giovannelli and his friend when they searched for his picture. Publication on a well-known, public e-commerce website is not "hidden, inherently undiscoverable, or inherently unknowable"—a common-sense conclusion that the Illinois Supreme Court would also likely reach.

Giovannelli offers two unpersuasive counterarguments. First, a search-engine result for his name did not unearth the posters. True, but that does not make the photo "hidden" or "inherently undiscoverable." And this claim is undercut by the apparent ease of actually finding the photo—his friend located it after searching their unit's name. Second, Giovannelli cites for support *Tom Olesker's Exciting World of Fashion, Inc. v. Dun & Bradstreet, Inc.*, 334 N.E.2d 160 (Ill. 1975). There, a national credit reporting agency falsely reported financial

information about the plaintiff's business. *Id.* at 161. The court applied the discovery rule because even a diligent plaintiff would not have found the business report. *Id.* at 164. But in that case, the report was only available to subscribers. *Id.* at 161. The modern analog is a website with a paywall. Here, by contrast, the websites displaying the poster of Giovannelli were publicly available. What is more, *Tom Olesker's* differentiated the credit report publication from "alleged defamations through so-called mass-media publication," like "magazines, books, newspapers, and radio and television programs." *Id.* at 164. Those publications are made public, "for public attention," and readers have "access to such published information." *Id.* Those characteristics are also true of posting on a website. Therefore, if anything, the publications of Giovannelli look closer to the cases *Tom Olesker's* distinguished where the single-publication rule applies.

One final issue. Stocktrek Corporation asks this court to sanction Giovannelli for including it in this appeal. Giovannelli's original complaint named Stocktrek Corporation as a defendant. That was a mistake, as he says he meant to sue Stocktrek Images, a separate corporation that was added to the first amended complaint. Stocktrek Corporation moved for summary judgment, arguing it had no involvement in this case. Giovannelli did not oppose the motion. Yet, Stocktrek Corporation contends Giovannelli continues to make them part of this appeal because his brief included them.

We do not read Giovannelli's appeal as a surreptitious attempt to rejoin Stocktrek Corporation; rather, his references to "Stocktrek" appear to be shorthand for Stocktrek Images. Sanctions are thus unnecessary. *Kinsella v. Baker Hughes*

*Oilfield Operations, LLC*, 66 F.4th 1099, 1106 (7th Cir. 2023) (sanctions are inappropriate for understandable mistakes).

\* \* \*

The Illinois Appellate Court in *Blair* declined to apply a discovery rule to a plaintiff's claim under the Illinois Right of Publicity Act. Instead, it applied the single-publication rule. We see no reason to question that holding, which disposes of this appeal. Though the single-publication rule has an exception, Giovannelli fails to meet it.

AFFIRMED